# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

CITIZENS AGAINST SOLAR )
POLLUTION, a Delaware unincorporated )
nonprofit association, DONALD LEE )
GOLDSBOROUGH, TRUSTEE UNDER )
REVOCABLE TRUST AGREEMENT OF )
DONALD LEE GOLDSBOROUGH )
DATED 12/22/10, and KELLIE ELAINE )
GOLDSBOROUGH, TRUSTEE UNDER )
REVOCABLE TRUST AGREEMENT OF )
KELLIE ELAINE GOLDSBOROUGH ) C.A. No. N23C-03-196 VLM
DATED 12/22/10, )
          )
    Plaintiffs, )
          )
     v. )
          )
KENT COUNTY, a political subdivision )
of the State of Delaware, KENT COUNTY )
LEVY COURT, the governing body of )
Kent County, FPS CEDAR CREEK )
SOLAR LLC, a Delaware limited liability )
company, and THE PINEY CEDAR )
TRUST, JAMES C. KNOTTS, JR., )
CHERYL A. KNOTTS, DE LAND )
HOLDINGS 1 LLC, a Delaware limited )
liability company, AMY PEOPLES, )
TRUSTEE OF THE PINEY CEDAR )
TRUST, and RICHARD A. PEOPLES, )
TRUSTEE OF THE PINEY CEDAR )
TRUST, )
          )
    Defendants. )

Submitted: July 18, 2023
Decided: October 17, 2023

# MEMORANDUM OPINION

Richard L. Abbott, Esq., Abbott Law Firm, Hockessin, Delaware, *Attorney for Plaintiffs Citizens Against Solar Pollution, Donald Lee Goldsborough,* and *Kellie Elaine Goldsborough.*

Max B. Walton, Esq., Lisa R. Hatfield, Esq., and Erica K. Sefton, Esq., Connolly Gallagher LLP, Newark, Delaware, *Attorneys for Defendants Kent County and Kent County Levy Court.*

Richard A. Forsten, Esq., Wendie C. Stabler, Esq., and James D. Taylor, Jr., Esq., Saul Ewing LLP, Wilmington, Delaware, *Attorneys for Defendants FPS Cedar Creek Solar LLC, DE Land Holdings 1 LLC, The Piney Cedar Trust, James C. Knotts, Jr., Cheryl A. Knotts, Amy Peoples, Trustee of the Piney Cedar Trust, and Richard A. Peoples, Trustee of the Piney Cedar Trust.*

**Medinilla, J.**

# I. INTRODUCTION

The Kent County Levy Court approved a conditional use permit application filed by Defendant FPS Cedar Creek Solar, LLC, to construct a solar farm near property owned by members of Plaintiff Citizens Against Solar Pollution. Challenging the grant of the permit, Plaintiffs filed an action in the Court of Chancery seeking injunctive relief and a declaratory judgment against the Levy Court and Kent County as well as FPS, The Piney Cedar Trust, James C. Knotts, Jr., Cheryl A. Knotts, DE Land Holdings 1 LLC, Amy Peoples and Richard A. Peoples, Trustees of The Piney Cedar Trust. The Court of Chancery dismissed the case and granted Plaintiffs leave to transfer the matter to this Court after determining that it lacked subject matter jurisdiction because there was an adequate remedy at law; namely, review by common law writ of *certiorari*.

Plaintiffs filed an Amended Complaint that sought declaratory judgment in one count and *certiorari* review in another. Plaintiffs also filed a separate Motion for Writ of *Certiorari*. All Defendants now move to dismiss all matters in their entirety under Superior Court Civil Rule 12(b)(6). For the reasons stated below, Defendants' Motion to Dismiss is **GRANTED,** *in part,* **DENIED,** *in part.* Plaintiffs' "Motion" for Certiorari is **MOOT.**

3

## II. FACTUAL AND PROCEDURAL BACKGROUND[1]

## A. PARTIES

On January 25, 2022[2], the Kent County Levy Court ("Levy Court") approved a conditional use permit application filed by Defendant FPS Cedar Creek Solar, LLC, a Delaware Limited Liability Company ("Freepoint"), to construct a solar farm near property owned by members of Plaintiff Citizens Against Solar Pollution, a Delaware Unincorporated Nonprofit Association (together, "Plaintiffs").[3]

On March 25, 2022, Plaintiffs brought an action in the Court of Chancery seeking a preliminary injunction, permanent injunction, and declaratory judgment against all Defendants: the Levy Court and Kent County (the "County Defendants") as well as Freepoint, The Piney Cedar Trust, James C. Knotts, Jr., Cheryl A. Knotts, DE Land Holdings 1 LLC, Amy Peoples and Richard A. Peoples, Trustees of the Piney Cedar Trust (the "Freepoint Defendants").[4]

---

[1] Unless otherwise noted, this Court's recitation is drawn from Plaintiffs' Amended Complaint ("Complaint") and all documents the parties incorporated by reference. Am. Compl. (D.I. 1) ("Am. Compl."); *see In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 69–70 (Del. 1995).

[2] Although not disputed by the parties in this matter, Plaintiffs only cite to January 26, 2022, the date the Levy Court notified Freepoint that the conditional use permit application had "allegedly been approved." Am. Compl. ¶ 42. In the first responsive pleading, County Defendants cite to January 25, 2022, the date the Levy Court approved Freepoint's conditional use permit application. County Defs.' Resp. in Opp'n to Pls.' Mot. for Writ of Cert. ¶ 2 (D.I. 5) ("County Defs.' Resp.").

[3] County Defs.' Resp. ¶ 2.

[4] *Id*.

## B. PROCEDURAL POSTURE

### 1.     The Court of Chancery Action[5]

Plaintiffs filed first in the Court of Chancery on March 25, 2022.[6]   They challenged the Levy Court's approval of the conditional use permit[7] as invalid and sought the following remedies: (1) a preliminary injunction preventing Freepoint from commencing construction on the solar farm; (2) a permanent injunction barring Freepoint from relying on the Levy Court's approval; and (3) a declaratory judgment regarding the legality of the Levy Court's approval.[8]

On September 27, 2022, via a cross-motion for summary judgment, Defendants raised the issue of standing and cited support in *Dover Historical Society v. City of Dover Planning Commission.*[9]   The Court of Chancery noted the authority implicated issues of subject matter jurisdiction, where the Delaware Supreme Court explained that it is "well established that a writ of *certiorari* proceeding in the Superior Court is the appropriate cause of action for determining whether, on the

---

[5] Generally, citations regarding the Court of Chancery Action cite directly to the Order Dismissing Complaint with Leave to Transfer decided on February 24, 2023.  *Citizens Against Solar Pollution v. Kent Cnty.*, 2023 WL 2199646 (Del. Ch. Feb. 24, 2023) ("*Citizens Against Solar Pollution I*"). Otherwise, citations regarding the Court of Chancery Action cite to the Exhibits in the Amended Complaint.

[6] Am. Compl. Ex. 4.

[7] *Delta Eta Corp. v. City of Newark*, 2023 WL 2982180, at *1 n.1 (Del. Ch. Feb. 2, 2023) ("*Delta Eta*"); *See* 2 Patricia E. Salkin, *American Law of Zoning* § 14:1 (5th ed. 2008) ("The terms 'special use permit,' 'special exception,' 'development permit,' and 'conditional use permit' are often used interchangeably.").  For the sake of clarity, this Court uses conditional use permit.

[8] Am. Compl. Ex. 4.

[9] *See Dover Historical Soc. v. City of Dover Planning Comm'n*, 838 A.2d 1103 (Del. 2003).

face of the record, the [agency] exceeded its powers or failed to conform to the requirements of law."[10]  Accordingly, the Court ordered the parties to submit supplemental briefing regarding subject matter jurisdiction.[11]  The parties thereafter alerted the Court to the February 2023 decision in *Delta Eta Corporation v. City of Newark*.[12]

On February 24, 2023, the Court, adopting the reasoning of *Delta Eta*, agreed that, "unless the claimant demonstrates otherwise, a writ of *certiorari* provides an adequate remedy at law to redress harm caused by a quasi-judicial decision denying a conditional use permit."[13]  Holding that it lacked subject matter jurisdiction, the Court dismissed the Complaint without prejudice with leave to transfer the action to this Court pursuant to 10 *Del. C.* § 1902.[14]  In so doing, it noted Plaintiffs had an adequate remedy at law, a writ of *certiorari,* and found that injunctive relief was not proper.[15]  Recognizing Plaintiffs' concerns regarding interim injunctive relief, the Court also noted the status quo order was to remain in effect "until the earlier of Plaintiffs' election to transfer and 60 days from the date of this Order."[16]

---

[10] *Citizens Against Solar Pollution I*, 2023 WL 2199646, at *1 (quoting *Dover Historical Soc. v. City of Dover Planning Comm'n* at 1106).

[11] *Citizens Against Solar Pollution I*, 2023 WL 2199646, at *1.

[12] *Id.* (citing *Delta Eta*, 2023 WL 2982180, at *14) (holding that "the City Council acted in a quasi-judicial capacity in denying the Special Use Application. It follows that a writ of *certiorari* is available to Delta Eta.").

[13] *Citizens Against Solar Pollution I*, 2023 WL 2199646, at *1.

[14] *Id.* at *3.

[15] *Id.*

[16] *Id.*

## 2.     This Action

On March 21, 2023, pursuant to 10 *Del. C.* § 1902, Plaintiffs filed their Amended Complaint in this Court and sought a declaratory judgment and *certiorari* review.[17]   On March 29, 2023, Plaintiffs also filed a "Motion" for Writ of *Certiorari* and requested a stay to ensure that Defendants would not act upon the Levy Court's grant of the conditional use permit.[18]

On April 10, 2023, Plaintiffs' counsel wrote to this Court for direction, stating the parties were "at an impasse on how to proceed [procedurally] in this somewhat unique case," namely, that Plaintiffs wished to resume litigation at the summary judgment stage whereas Defendants planned to seek dismissal under Superior Court Civil Rule 12(b)(6).[19]

On April 24, 2023, the Court held a status conference at which time the Defendants confirmed their intent and sought leave to file a motion to dismiss the Amended Complaint.[20]   Plaintiffs wanted to brief what they considered issues presented for the first time here.[21]   Concerned that Defendants would act upon the Levy Court's approval, despite the ongoing litigation, Plaintiffs requested a stay.[22]

---

[17] *See* Am. Compl.
[18] Pls.' Mot. for Writ of Cert. ¶ 9 (D.I. 3) ("Pls.' Mot. for Writ of Cert.").
[19] Pls.' Letter Req. Status Conference and Providing Orders and Decision for Ct.'s Reference (D.I. 4) ("Pls.' Letter").
[20] Parties' Status Conference dated 4-24-2023 (D.I. 13) ("Status Conference").
[21] *Id.*
[22] Status Conference.

Upon agreement of all Defendants,[23] this Court allowed for the issuance of the writ of *certiorari*, holding it in abeyance during the pendency of this ruling.[24] Common sense suggested as much.[25]

County Defendants filed a Motion to Dismiss Plaintiffs' complaint as untimely and improper.[26] Plaintiffs filed their answering brief,[27] to which County Defendants replied,[28] with Freepoint Defendants joining.[29] This Court heard argument thereafter,[30] and the matter is now ripe for decision.

---

[23] Defs.' Joint Letter to the Ct. (D.I. 14) ("Defs.' Joint Letter").
[24] Ct.'s Letter to Counsel (D.I. 16) ("Letter to Counsel").
[25] *Citizens Against Solar Pollution I*, 2023 WL 2199646, at *3. (In the Chancery Action, the Court noted that Freepoint averred that it would "'def[y] logic' to think it would begin construction while its permit hangs in the balance.")
[26] County Defs.' Mot. to Dismiss Compl. (D.I. 17) ("County Defs.' Mot. to Dismiss Compl.").
[27] Pls.' Answering Br. in Opp'n to County Defs.' Mot. to Dismiss (D.I. 18) ("Pls.' Answering Br. in Opp'n to County Defs.' Mot. to Dismiss").
[28] County Defs.' Reply Br. in Supp. of Mot. to Dismiss (D.I. 20) ("County Defs.' Reply Br. in Supp. of Mot. to Dismiss").
[29] Freepoint Defs.' Joinder to County Defs.' Reply Br. in Supp. of Mot. to Dismiss (D.I. 21) ("Freepoint Defs.' Joinder to County Defs.' Reply Br. in Supp. of Mot. to Dismiss").
[30] Judicial Action Form dated 7-18-2023 (D.I. 22).

## III. *DELTA ETA*

As the Chancery Action had adopted the rationale of *Delta Eta*,[31] the summary below contextualizes the parties' contentions.

Delta Eta, the fraternity chapter's housing corporation for Pi Kappa Alpha, applied for a special use permit seeking to use a previously owned residence as the chapter's fraternity house in Newark, Delaware.[32] Under Newark's city code, special use permits can be issued for certain uses depending on the zoning of the district.[33] The Newark City Council denied the permit.[34]

Fifty-eight (58) days later, counsel for Delta Eta (same counsel for Plaintiffs here) filed an action in the Court of Chancery against the City and the Council members who had voted no on the special use permit.[35] Count I sought a permanent injunction prohibiting the City and Council members from relying on the special permit denial and mandating that the special permit be approved.[36] Count II sought

---

[31] *Delta Eta*, 2023 WL 2982180, at *14 (explaining that a writ of *certiorari* is an adequate legal remedy for challenging the quasi-judicial denial of a special use permit.) On the same day as *Delta Eta* was decided, the same Vice-Chancellor also issued *Middlecap Associates, LLC v. Town of Middletown*, 2023 WL 2981893, at *2 (Del. Ch. Feb. 2, 2023) ("My reasoning and conclusions in *Delta Eta* apply with equal force to this matter. The denial of Petitioner's conditional use permit was a quasi-judicial act, guided by Town Code requirements for a conditional use allowed in the C-3 Zoning districts. For the reasons stated in *Delta Eta*, a writ of certiorari is or was available to Petitioner.").

[32] *Delta Eta,* 2023 WL 2982180, at *1.

[33] *Id.* at *2.

[34] *Id.* at *3–4.

[35] *Id.* at *4.

[36] *Id.*

a declaratory judgment that the denial of the special use permit was invalid, and that Delta Eta was entitled to "issuance of the Special Use Permit as a matter of law."[37]

Defendants thereafter sought dismissal invoking Court of Chancery Rule 12(b)(1) and 12(b)(6), asserting that the Court lacked subject matter jurisdiction.[38] On February 2, 2023, the Court agreed, and dismissed the Complaint with leave to transfer the action to this Court pursuant to 10 *Del. C.* § 1902.[39]

The Court of Chancery noted that, "careful examination of the housing corporation's allegations reveals that the city council acted in a quasi-judicial capacity when it denied the special use permit, and so a writ of *certiorari* in our sister courts of law is available and affords an adequate remedy."[40] It found Delta Eta's request fell short of invoking equitable jurisdiction "both because [Delta Eta] has not sufficiently pled the need for an injunction, and because a writ of *certiorari* provides an adequate remedy at law."[41] Regarding the availability of that writ, the Court noted that the fact "[t]hat Delta Eta waited to seek *certiorari* review such that it may now be unavailable is irrelevant for purposes of this decision."[42] Like

---

[37] *Delta Eta,* 2023 WL 2982180, at *4.
[38] *Id.*
[39] *Id.* at *20.
[40] *Id*. at *1.
[41] *Id*. at *4.
[42] *Id*. at *14 n.127. (*See In re Wife, K*., 297 A.2d 424, 425 (Del. Ch. 1972)) ("[I]f a litigant fails to avail himself of a remedy provided by law and is subsequently barred from pursuing that remedy because of his own lack of diligence, he cannot then rely on the absence of a remedy at law as a basis for equitable jurisdiction.").

Plaintiffs, Delta Eta has since filed for identical relief in this Court.[43] That decision is pending.

## IV. PARTIES' CONTENTIONS

Defendants strategically move to dismiss the claim for *certiorari* review as time-barred under well-settled law that such writs must be filed within thirty days of the decision sought to be reviewed, absent exceptional circumstances.[44] They argue that Plaintiffs' unilateral choice to file in the Court of Chancery fifty-eight (58) days after the approval of the conditional use permit was untimely, and that Plaintiffs offer no exceptional circumstances exempting them from the thirty-day filing rule applicable to a common law *certiorari* petition.[45]

Defendants further contend the declaratory judgment claim must be dismissed because that remedy is available only when no other remedy exists.[46] In that vein, they maintain that Plaintiffs' failure to timely pursue *certiorari* does not render that remedy inadequate.[47] And since Plaintiffs had an adequate remedy via *certiorari*, the declaratory judgment claim must be dismissed.[48]

Plaintiffs' opposition is multi-faceted. Through various restyled contentions, Plaintiffs' argument against dismissal can be distilled to a single theme of criticism

---

[43] The Superior Court Action in *Delta Eta* is captioned C.A. No. N23C-03-136 SKR.
[44] County Defs.' Mot. to Dismiss Compl. ¶ 4.
[45] *Id.* ¶ 5.
[46] *Id.* ¶ 6.
[47] *Id.* ¶ 9.
[48] *Id.*

11

and disagreement with the *Delta Eta* ruling.[49] According to Plaintiffs, the Court "jettisoned decades of decisions that it had jurisdiction over zoning cases."[50] Indeed, they argue, filing in the Court of Chancery was common practice,[51] and subsequently provide a list of cases where Plaintiffs contend the Court of Chancery exercised jurisdiction over "similar zoning challenges."[52] Plaintiffs further contend that Defendants' defenses should be barred because they waited "too long" to raise them.[53] Conversely, Plaintiffs argue that they are not untimely under what they insist is the most analogous statute, 10 *Del. C.* § 8126, which allows for a sixty-day statutory filing period.[54] Too, they suggest this Court should exercise discretion and find the existence of "unique and extraordinary circumstances" to excuse any filing delay.[55] And lastly, they argue, the motion to dismiss should be barred by the doctrines of waiver,[56] judicial estoppel,[57] and the law of the case[58] because Defendants withheld their intent to seek dismissal here from the Court of Chancery.

---

[49] Pls.' Answering Br. in Opp'n to County Defs.' Mot. to Dismiss at 10-21.

[50] *Id.* at 10.

[51] *Id.* at 19 n.13. (Plaintiffs allege that "no one could have anticipated the jurisdictional change of course that took place in this action.").

[52] *Id.* at 15-19. Plaintiffs' list includes *Coker v. Kent Cnty. Levy Court*, 2008 WL 5451337 (Del. Ch. Dec. 23, 2008). Although Plaintiffs refer to *Coker* only by name and do not base any argumentation on it, *Coker* was issued in 2008 by the Court of Chancery that considered a challenge of the Kent County Levy Court's denial of a conditional use application.

[53] *Id.* at 21–23.

[54] *Id.* at 28–33.

[55] *Id.* at 30-33.

[56] *Id.* at 34–36.

[57] *Id.* at 34-39.

[58] *Id.* at 39–40.

Alternatively, Plaintiffs maintain that declaratory judgment is an appropriate remedy in lieu of *certiorari* review.[59] They insist again that this Court lacks jurisdiction, should "skip all of the arguments," and transfer the case back to the Court of Chancery[60] "based upon the principle that a *writ of certiorari* is unavailable when another adequate remedy is available."[61]

## V. STANDARD OF REVIEW

Under Delaware Superior Court Civil Rule 12(b)(6), dismissal is appropriate when the complaint fails to state a claim upon which relief can be granted.[62]

> When reviewing a ruling on a motion to dismiss, we (1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as "well pleaded" if they give the opposing party notice of the claim, (3) draw all reasonable inferences in favor of the non-moving party, and (4) do not affirm a dismissal unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[63]

## VI. DISCUSSION

Article IV, Section 7 of the Delaware Constitution, vests this Court with "original and exclusive jurisdiction among trial courts. . . to issue common law writs

---

[59] Pls.' Answering Br. in Opp'n to County Defs.' Mot. to Dismiss at 41-48.
[60] *Id.* at 51.
[61] *Id.* at 49.
[62] Super. Ct. Civ. R. 12(b)(6).
[63] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Holdings LLC*, 27 A.3d 531, 535 (Del. 2011) (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del. 2002)).

of *certiorari*."[64] The Court of Chancery "generally lacks jurisdiction to consider the issuance of the common law writ."[65] Previously, the Court of Chancery had contemplated, *at least in the abstract*, the viability of conducting *certiorari* review under the clean-up doctrine.[66] But at present, only this Court can conduct this review.

---

[64] *Young v. Red Clay Consol. Sch. Dist.*, 2015 WL 5853762, at *5 (Del. Ch. Oct. 2, 2015) (citing *Maddrey v. Justice of the Peace Court 13,* 956 A.2d 1204, 1207 (Del. 2008)); *see* 1 Victor B. Wooley, *Practice in Civil Actions and Proceedings in the Law Courts of the State of Delaware* §§ 894–896 (1906) (describing common law writ of certiorari as falling within authority of Superior Court).

[65] *Young,* 2015 WL 5853762, at *5 (citing *Gladney v. City of Wilm.,* 2011 WL 6016048, at *4 (Del. Ch. Nov. 30, 2011) ("[T]he true substance of the relief [plaintiff] seeks is a writ of certiorari, which is both an adequate remedy at law and a remedy reserved to the exclusive jurisdiction of the Superior Court.")) (citations omitted).

[66] *Young,* 2015 WL 5853762, at *7 ("No Delaware case has addressed whether the Court of Chancery could exercise clean-up jurisdiction to issue a common law writ of certiorari. The parties have not cited precedents from other jurisdictions that might shed light on the question, nor have they dusted off venerable treatises on equity practice and procedure. Moreover, any answer that this court might give would not be definitive. Only the Delaware Supreme Court could reconcile two competing sources of jurisdiction, each of constitutional magnitude.").

## A. WRIT OF *CERTIORARI*

One of the oldest common law writs, the writ of *certiorari* is "simply a form that calls up, for review, the record from the lower court or tribunal."[67] "*[C]ertiorari* involves a review of only such errors as appear on the face of the record being considered."[68] It is "*not* a substitute for, or the functional equivalent of, an appeal."[69] Nor may this Court consider the case on the merits.[70] Such review is available only where "(1) the lower entity has acted in a judicial or quasi-judicial capacity,[71] (2) there is no other adequate remedy at law,[72] and (3) there is no right to appeal."[73] In *Matter of Gunn,* the Supreme Court indicated that the time limit to file a writ of

---

[67] *Reise v. Bd. of Bldg. Appeals of City of Newark*, 746 A.2d 271, 273 (Del. 2000), *overruled by Black v. New Castle Cnty. Bd. of License,* 117 A.3d 1027 (Del. 2015) (citing *Matter of Butler*, 609 A.2d 1080 (Del. 1992)).

[68] *Castner v. State*, 311 A.2d 858, 858 (Del. 1973) (citations omitted).

[69] *Maddrey*, 956 A.2d at 1213 (citing *DuPont v. Family Ct. for New Castle County,* 153 A.2d 189, 194 (Del.1959)) ("it is apparent that review by writ of *certiorari* is not the equivalent [of an appeal], for in such proceedings the evidence received in the inferior court is not part of the record to be reviewed in a *certiorari* proceeding.").

[70] *Christiana Town Ctr., LLC v. New Castle Cnty.*, 865 A.2d 521 (Del. 2004) ("The reviewing court does not consider the case on its merits; rather, it considers the record to determine whether the lower tribunal exceeded its jurisdiction, committed errors of law, or proceeded irregularly.") (citations omitted).

[71] *Delta Eta*, 2023 WL 2982180, at *10 (citing *Dover Historical Soc.* at 1106) ("The common law writ of certiorari lies to review acts that are judicial or quasi-judicial in nature.") (citations omitted).

[72] *Id.* (citing *In re Petition of Howell*, 2007 WL 1114123, at *1 (Del. 2007)).

[73] *Id.* (*See Reise v. Bd. of Bldg. Appeals of City of Newark*, 746 A.2d at 272).

*certiorari* is thirty (30) days from the action underlying the petition,[74] excusable only under exceptional circumstances."[75]

### 1. Thirty-Day Filing for Writ of *Certiorari*

It is undisputed that Plaintiffs filed their first challenge fifty-eight (58) days after the Levy Court made its determination to grant the conditional use permit. To be fair, Plaintiffs were not seeking *certiorari* review. Yet, Defendants rely solely on the 30-day *certiorari* deadline to argue for dismissal of all claims.

Plaintiffs offer statutory alternatives, case law, and common practices to suggest the time limit to file the review is sixty (60) days.[76] Specifically, they propose that the "law in Delaware is that a *certiorari* action must generally be filed within the period of time contained in the most closely analogous Delaware Code provision."[77] And to them, that 10 *Del. C.* § 8126—which governs county and

---

[74] *Matter of Gunn*, 122 A.3d 1292, 1293 (Del. 2015); *In re Bass,* 1992 WL 183105, at *1 (Del. July 23, 1992); *Cape Henlopen School District v. Delaware Interscholastic Athletic Ass'n,* 2009 WL 388944, at *2 (Del. Super. Ct. Jan. 28, 2009) (" 'There appears to be no good reason, absent exceptional circumstances, why a party should have more time to ask for the writ of certiorari than he would have to take an appeal . . . in an ordinary case' ") (quoting *Elcorta, Inc. v. Summit Aviation, Inc.,* 528 A.2d 1199, 1201 (Del. Super. Ct. 1987)).

[75] *Id. In re Petition of Fridge,* 604 A.2d 417 (Table), 1991 WL 247811, at *1 (Del. Nov. 20, 1991) ("Although there is no statutorily-imposed time period in which to seek review under a writ of certiorari, we have ruled that the time for seeking such review is analogous to the period governing direct appeals" and holding that a petition not filed within thirty days was time barred); *McIntosh v. City of Newark,* 2006 WL 1134894, at *1 (Del. Super. Ct. Mar. 31, 2006) ("The period of time for filing a Petition for a Writ of Certiorari has been set by decisions in this Court at 30 days.").

[76] Pls.' Answering Br. in Opp'n to County Defs.' Mot. to Dismiss at 24-28.

[77] *Id*. at 25.

16

municipality zoning and planning actions with its 60-day filing time limit—is most analogous.[78]  Not so.

At the outset, it is true that the statute of repose included within 10 *Del. C.* § 8126 requires any challenge of a municipal zoning decision to be filed within 60 days.[79]  The act of rezoning is legislative in nature and therefore cannot be subject to a writ of *certiorari*.[80]  But here, the Court of Chancery determined that the Levy Court's role was to approve or deny a special use permit, and as explained in *Delta Eta*, "[w]hen the availability of the special use permit is circumscribed by ordinance, approving or denying a special use permit application is a quasi-judicial act,"[81] subject only to review by writ of *certiorari*.[82]

Next, the request to revisit the Court of Chancery's determination exceeds the scope of review in this 12(b)(6) motion.  Consideration of a most analogous statute

---

[78] Pls.' Answering Br. in Opp'n to County Defs.' Mot. to Dismiss at 25.

[79] *See* 10 *Del. C*. § 8126.

[80] *See Delta Eta*, 2023 WL 2982180, at *17 ("As explained, the act of rezoning is legislative in nature and therefore cannot be subject to a writ of certiorari that precludes this Court's jurisdiction") (citations omitted).

[81] *Delta Eta*, 2023 WL 2982180, at *13; (citations omitted); *See Omnipoint Corp. v. Zoning Hearing Bd. Of Pine Grove Twp.*, 181 F.3d 403, 409 (3d Cir. 1999) (reasoning a zoning hearing board acted in a quasi-judicial capacity when it denied an application for a special use permit); *see also* 3 Arden H. Rathkopf et al., *Rathkopf's The Law of Zoning and Planning* § 61:47 (4th ed. 2005) ("For the purpose of judicial review, many if not most courts treat the decision of a local legislative body to grant or deny a special permit as a quasi-judicial act subject to court review on questions of law and abuse of discretion and substantial evidence review of reasons and findings.").

[82] *Citizens Against Solar Pollution I,* 2023 WL 2199646, at *2.

is also not proper where after *Gunn*, our Supreme Court indicated the 30-day deadline applies to common law *certiorari* review. To accept Plaintiffs' position that a 60-day time limit applies would require this Court to: (1) ignore the Supreme Court's pronouncement under *Gunn;* and (2) reject the Chancery Court's determination that the Levy Court's act was quasi-judicial. Neither is proper.

## 2. Exceptional Circumstances

A petition for a writ of *certiorari* "filed later than thirty days will be excused only under exceptional circumstances."[83] While Delaware courts have not settled on what constitutes an "exceptional circumstance,"[84] the Delaware Supreme Court did conclude in *Gunn* that "[p]etitioner's unilateral decision to pursue an improper course of litigation is not an exceptional circumstance that excuses the delay in filing the Petition for a writ of *certiorari*."[85]

The issue of whether exceptional circumstances exist to excuse the untimeliness has been argued by both sides here. Rather than provide circumstances for why Plaintiffs failed to file before the 30-day deadline, they point to the *Delta Eta* decision. Defendants say Plaintiffs simply made a wrong choice to file in the Court of Chancery. For completeness, this Court addresses each of their arguments.

---

[83] *Matter of Gunn*, 122 A.3d at 1293.
[84] *FMC Corp. v. Special Servs. Dep't*, 2017 WL 2378002, at *4 (Del. Super. Ct. May 31, 2017).
[85] *Matter of Gunn*, 122 A.3d at 1293.

18

Plaintiffs' counsel is a seasoned land-use practitioner. In challenging the Levy Court's decision granting the conditional use permit, Plaintiffs sought equitable relief in the form of both a temporary and permanent injunction and filed 58 days after the Levy Court acted. No doubt the equitable relief sought in Chancery would have allowed Plaintiffs to reap the benefits of discovery and a different standard of review, [86] neither of which is available through *certiorari* review.[87]

Plaintiffs' counsel, for good reason, may have always believed this a proper course. This Court has a sympathetic ear to the Bar that practices in this area and some understanding of its previous filing practices. Indeed, this Court could perhaps have determined the existence of exceptional circumstances if Plaintiffs had offered more than surprise and disagreement with the *Delta Eta* ruling as its non-articulated bases. But this Court is limited to Plaintiffs' arguments as presented. And on this record, they are insufficient. Plaintiffs make two incorrect assumptions: that this Court's authority is sufficiently broad to conduct a review of a sister court's decision in order to find exceptional circumstances; and that the circumstance of an unfavorable court ruling—standing alone—is exceptional.

---

[86] *Maddrey*, 956 A.2d at 1207. ("[T]he Superior Court's scope of review on common law writs of *certiorari* issued to any inferior tribunal in any type of case, is limited to errors on the face of the record.").

[87] *Id.* at 1213. ("The reviewing court does not consider the merits of the case. It considers only those issues historically considered at common law; namely, whether the lower tribunal (1) committed errors of law, (2) exceeded its jurisdiction, or (3) proceeded irregularly.") (citations omitted).

Of course, this Court has found exceptional circumstances in some instances. In *FMC Corporation v. Special Services Department,* compelling circumstances existed to justify extension of the 30-day deadline for *certiorari* review.[88] There, the Court found exceptional circumstances because the petitioner had properly sought and timely filed for appellate review under the applicable county code that the petitioner understood as specifically providing for appeals.[89] As it turns out, that code's provision misstated the process for "appellate" review.[90] After the *FMC Corp.* Court concluded that the petitioner did not have a statutory appeal right, it determined that the exceptional standards were appropriately met.[91]

But here, Plaintiffs do not argue a mistake in the law as written. Rather, they argue that the surprise of (and their disagreement with) the *Delta Eta* ruling is *the* exceptional circumstance that they complain "jettisoned decades of decisions that it had jurisdiction over zoning cases."[92] And just as Plaintiffs unsuccessfully argued

---

[88] *FMC Corp.*, 2017 WL 2378002, at *1.

[89] *Id*. at *4. ("Here, FMC filed a notice of appeal in a timely manner, providing copies and notice to both the Department and the County. FMC proceeded under Section 38.03.004 of the Code, which at least arguably could be understood to create a right of appeal to this Court. That Section certainly was enough to create a level of uncertainty regarding the proper way to appeal. Without any decision of this Court interpreting Section 38.03.004, FMC found itself between Scylla and Charybdis; whatever avenue it pursued, FMC would be faced with a timeliness argument if a court ultimately determined it was the wrong avenue. FMC's understandable uncertainty as to whether a right of direct appeal existed is excusable….").

[90] *Id*. at *3.

[91] *Id*. at *4.

[92] Pls.' Answering Br. in Opp'n to County Defs.' Mot. to Dismiss at 10-21.

20

the applicability of 10 *Del. C.* § 8126, they now suggest exceptional circumstances are established if this Court examines those past Chancery zoning decisions and declares a radical departure.  This Court cannot conduct the review as requested.

Enumerating various Sussex County rezoning decisions, Plaintiffs attach some historical significance to them,[93] and argue that *Delta Eta*'s ruling "failed to jibe with its decades-long exercise of jurisdiction over actions challenging…zoning decisions" and "flied in the face of the theory that [r]ezonings are always legislative and Conditional Use approvals are always quasi-judicial."[94]  Criticizing the *Delta Eta* decision, Plaintiffs elaborate on how other courts may have addressed the characterization of prior conditional use permits (*i.e.*, legislative, administrative, and quasi-judicial) and the differences in our counties' rezoning codes.[95]  But, in the end, Plaintiffs concede that the rezoning function is legislative.[96]

In an attempt to gain some ground, Plaintiffs posit that a mere finding of "appropriate circumstances" would allow the Court to exercise its discretion to

---

[93] Pls.' Answering Br. in Opp'n to County Defs.' Mot. to Dismiss at 11-21.

[94] *Id.* at 13.

[95] *Id.* at 10-12.

[96] *Id.* at 10. ("…although a rezoning function is legislative," it "resembles a judicial determination.").

excuse their delay.[97]  Even if this were the correct standard,[98] Plaintiffs' selected caselaw does not support their argument that this Court has such authority.

Plaintiffs rely on the trial court's decision in *Capano Investments v. Levenberg*[99] to suggest this Court "possesses judicial discretion under the unique and extraordinary circumstances [they claim are present here]. . . to rule that the certiorari filing was timely. . . ."[100]  But *Capano Investments* does not vest this Court with the discretion to qualify the circumstances here "extraordinary" as proposed by Plaintiffs.[101]  There, the Supreme Court affirmed the Superior Court's ruling that it did not have appellate jurisdiction to review a summary possession appeal where the law provided an appeal process to a special three-judge court.[102]  Plaintiffs cherry-pick language[103] from this Superior Court ruling[104] that has nothing to do with

---

[97] Pls.' Answering Br. in Opp'n to County Defs.' Mot. to Dismiss at 29-30.

[98] Plaintiffs' use of the "appropriate circumstances" standard ignores evolving Delaware case law. *Schafer v. Kent Cnty. Dep't of Planning Servs.*, 2023 WL 3750390, at *6 (Del. Super. Ct. May 31, 2023) (citing *Matter of Gunn*, 122 A.3d at 1293) (providing for the first time in Delaware decisional law that "exceptional circumstances" as opposed to "appropriate circumstances" are needed to excuse an untimely petition for writ of *certiorari*).

[99] 1988 WL 139892 (Del. Super. Ct. Dec. 9, 1988), *aff'd,* 564 A.2d 1130 (Del. 1989).

[100] Pls.' Answering Br. in Opp'n to County Defs.' Mot. to Dismiss at 31-32.

[101] *Id*.

[102] *See Capano Investments v. Levenberg*, 564 A.2d 1130 (Del. 1989).

[103] Pls.' Answering Br. in Opp'n to County Defs.' Mot. to Dismiss at 31. ("A good example of how this Court has exercised discretion to allow a *Certiorari* action to be filed beyond the 30-day rule of thumb is [*Capano Investments*].").

[104] What the Superior Court *did* say and what was subsequently affirmed by the Delaware Supreme Court was, "Capano's appeal must be dismissed because no appeal to Superior Court is provided in summary possession cases. Neither ground which Capano advances in support of its petition for a writ of certiorari is valid. It seeks a review of the merits of the case which is beyond the scope of certiorari, and its argument that the panel was deprived of jurisdiction…is rejected by this Court*." Capano Investments*, 1988 WL 139892, at *3.

22

exceptional circumstances,[105] and ignore the gravamen of the Supreme Court's decision affirming it.[106] The Supreme Court was not upholding a discretionary act. Instead, it simply affirmed that this Court did not have jurisdiction in that particular action.

Plaintiffs' refrain that the *Delta Eta* decision upended the universe of zoning jurisprudence misses the mark. This Court cannot conduct the proposed extensive review they seek in order to find exceptional circumstances. The choice to seek a more favorable form of review in one court over the permissible review by another is not sufficient to qualify as an exceptional circumstance. And the criticism of the *Delta Eta* ruling, without a substantive basis beyond mere disagreement with it, is also insufficient.

But the analysis does not end here. Both sides downplay the significance of 10 *Del. C.* § 1902's transfer provisions. Defendants turn a blind eye to it and Plaintiffs read it to suggest this matter should return to the Court of Chancery. This Court reads the transfer statute differently.

---

[105] The Superior Court held that it did not have jurisdiction and Plaintiffs' attempt to construe that as a judicial exercise of discretion is incorrect.

[106] *Capano Investments*, 564 A.2d at 1131 (holding that the Superior Court had no jurisdiction to review substantive rulings of the justice of the peace court in summary possession proceedings, and the statute permitting a right to appeal to a special court comprised of three justices of the peace did not give parties a right to appeal to the Superior Court).

### 3. Ten *Del. C.* § 1902's Discretionary Provisions

This matter was timely transferred from the Court of Chancery pursuant to 10 *Del. C.* § 1902, which statutorily authorizes the removal of actions from courts lacking jurisdiction. The law provides:

> No civil action, suit or other proceeding brought in any court of this State shall be dismissed solely on the ground that such court is without jurisdiction of the subject matter. . . .
>
> Such proceeding may be transferred to an appropriate court *for hearing and determination*. . . .
>
> The latter court shall thereupon entertain such applications in the proceeding as *conform to law and to the rules and practice of such court*, and may by rule or special order provide for amendments in pleadings and for all other matters concerning the course of procedure for hearing and determining the cause *as justice may require*.
>
> For the purpose of laches or of any statute of limitations, the time of bringing the proceeding shall be deemed to be the time when it was brought in the first court.
>
> *This section shall be liberally construed to permit and facilitate transfers of proceedings between the courts of this State in the interests of justice.*[107]

Defendants maintain this Court must dismiss where Plaintiffs "filed in the wrong court and sought the wrong remedy."[108] They double down and contend that

---

[107] 10 *Del. C.* § 1902 (emphasis added).
[108] County Defs.' Mot. to Dismiss Compl. ¶ 5.

the failure to file within the 30-day deadline serves to bar Plaintiffs here regardless of the transfer to this Court. This argument ignores § 1902's provisions.

Our Supreme Court has instructed that § 1902 is "a remedial statute designed to prevent a case from being totally ousted because it was brought in the wrong Court."[109] It further directed in *Nicholas v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa,* that "[a]ccording to its express terms [§] 1902 should be liberally applied to achieve its purposes."[110]

Thus, although § 1902 provides guidance as to timeliness issues associated with statute of limitations and laches, the policy considerations behind the statute are intended to allow judicial officers latitude in facilitating the transfer of cases. For the reasons more fully explained now, the language of § 1902 overrides any residual arguments that the missed deadline implicates this transfer.

### a. Section 1902's Conformity To Rules and Practice

Absent governing rules and procedures in this Court, a case transferred under § 1902 from the Court of Chancery is subject to judicial discretion in conformity to law and to the rules and practice of such court, and may by rule or special order,

---

[109] *Wilmington Tr. Co. v. Schneider*, 342 A.2d 240, 242 (Del. 1975).
[110] *Nicholas v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa*, 74 A.3d 634, 636 (Del. 2013) (quoting *Family Court of Delaware v. Giles*, 384 A.2d 623, 624 (Del. 1978)).

provide for amendments in order to facilitate the transfer of cases between Delaware courts.[111]

With this guidance, the Court looks to the Chancery Action's decision to grant Plaintiffs' leave to transfer their matter to this Court. The parties had reached the cross-summary judgment stage in the Chancery Action when the Court determined it lacked subject matter jurisdiction. Once here, the parties seemed unsure as to how to proceed, as evident from their respective filings.[112]

The Court of Chancery's most recent decision in *Kroll v. City of Wilmington*[113] speaks to the complexity surrounding the intersection of the transfer of cases between the courts. It is not the *Kroll* Court's holding on the issue of subject matter jurisdiction that is germane to the issue here, but its acknowledgement that both the Chancery and Superior courts need to attain some procedural footing in light of the recent decisions following *Delta Eta. Kroll* noted that:

> [t]he parties' briefing raises interesting issues on the fault lines between this court's jurisdiction and the Superior Court's exclusive powers to review certain administrative decisions through the writ of *certiorari*.
>
> . . .[T]he briefing did not offer much in the way of a resolution. And the answer is messy—there seems to be no clear rule for deciding

---

[111] *See* 10 *Del. C*. § 1902.

[112] Plaintiffs' belt and suspenders filings include both an Amended Complaint and a Motion for Writ of *Certiorari* to stay the proceedings, even after the Chancery Action had clarified that the matter had been stayed during the pendency of litigation in both courts. Defendants conceded as much. Defendants also sought direction and leave to file a Motion to Dismiss as their responsive pleading to the Amended Complaint.

[113] 2023 WL 6012795 (Del. Ch. Sept. 15, 2023).

whether *certiorari* presents an adequate remedy to injunctive relief. . . .[114]

The apparent availability of *certiorari* and injunctive relief as dueling review mechanisms of last resort for administrative decisions raises a complicated jurisdictional analysis for the Court of Chancery.[115]

So, by default, this Court must also consider the procedural processes moving forward.[116] This Court, finding itself in "murky and dispositive"[117] territory concerning a § 1902 transfer also steers clear of a ruling that would unduly penalize Plaintiffs and leave them without a remedy in either court.[118] Section 1902 affords the exercise of discretion to prevent such a harsh result. This further aligns with our sister court's recent post-*Delta Eta* observation that "[e]ven where the court has found itself devoid of subject matter jurisdiction because *certiorari* was available, it

---

[114] *Kroll*, 2023 WL 6012795, at *2.

[115] *Id.* at *11.

[116] Pending in this Court are two additional cases transferred under § 1902: *Delta Eta* captioned C.A. No. N23C-03-136 SKR and *Middlecap Assoc. vs. The Town of Middletown* captioned C.A. No. N23C-03-181 CEB.

[117] *Otto Candies, LLC v. KPMG, LLP*, 2019 WL 1856766, at *4 (Del. Ch. Apr. 25, 2019) ("I believe Plaintiffs likewise operated in good faith while in the shadow of a murky and dispositive legal issue. I apply the good cause exception to dismiss Plaintiffs' claims without prejudice. But now that the issue has been sorted out, I would not give the same latitude to future parties in similar situations.").

[118] *Id.* at *1. ("…Rule 15(aaa), or the policies that motivate it, apply when a complaint is transferred to this Court subject to a fully briefed motion seeking dismissal under Rules 12(b)(6) or 23.1. Transferring plaintiffs must either seek leave to amend or stand firm on their complaint and risk dismissal with prejudice under Rule 15(aaa). However, because the parties in this action were the first to confront this issue, the interests of justice require a mulligan. Extinguishing plaintiffs' claims with prejudice under Rule 15(aaa) would be unduly penal under the circumstances, and so their claims are dismissed without prejudice under the good cause exception to Rule 15(aaa).").

27

has avoided announcing a categorical rule to that effect and has always paid special attention to the relief sought by the plaintiff."[119]

### b. Section 1902's Mandate in the Interests of Justice

In the aftermath of *Delta Eta,* some defendants that have moved for dismissal, have later agreed that the reasonable course is to avoid the wholesale dismissal of an action, and accordingly, simply consented to amendment of the transferred matter to include *certiorari* review.[120] This allows these actions to move forward without consideration of the timeliness issue.[121]

Defendants here, however, raise the timeliness issue that creates a catch-22. Having successfully argued that the Court of Chancery lacks jurisdiction because a legal remedy exists here, it now asks this Court to find the remedy is time-barred. Plaintiffs cry foul. They say Defendants' failure to raise the timeliness argument in the Chancery Action should now bar Defendants' untimeliness defense under the doctrines of waiver,[122] judicial estoppel,[123] and law of the case, respectively.[124]

---

[119] *Kroll v. City of Wilmington*, 2023 WL 6012795, at *11.

[120] *See 3330 Hospitality Group, LLC. v. City of Rehoboth Beach, et al.* (Captioned S22C-11-016 RHR) (Upon Defendant's Motion to Dismiss Plaintiff's Complaint Upon Transfer, from a bench ruling, the Superior Court "directs Plaintiff to amend the Complaint to *certiorari* with writ within thirty (30) days….") (D.I. 15). It's often sunnier in Sussex County.

[121] *Id.*

[122] Pls.' Answering Br. in Opp'n to County Defs.' Mot. to Dismiss at 34–35.

[123] *Id.* at 36-39.

[124] *Id.* at 39–40.

It is true that the Chancery Action never addressed the issue of timeliness. Whether Defendants did, or failed to make, inconsistent or contrary arguments in that Court is of no consequence. This Court also need not consider the doctrines of waiver, estoppel, or law of the case as argued by Plaintiff.[125] The language of § 1902 and the Court of Chancery's decision to transfer are sufficient.[126]

The express language of § 1902 mandates it "be liberally construed to permit and facilitate transfer…*in the interests of justice*," allowing a "course of procedure for hearing and determining the cause *as justice may require*."[127] The procedural history reflects that from the first pleading when Defendants filed their Answer to the Verified Complaint—and throughout the life of the Chancery Action—they insisted dismissal was warranted because Plaintiffs had an adequate remedy at law.[128]

---

[125] Pls.' Answering Br. in Opp'n to County Defs.' Mot. to Dismiss at 39-40. To the extent that Plaintiffs argue the 12(b)(6) motion for dismissal is barred by the Law of the Case Doctrine, the argument fails as presented where Plaintiffs seek a remand to the Court of Chancery. This Court is bound to consider only the writ of *certiorari* as contemplated by the Court of Chancery.

[126] *See Revolution Rentals DE, LLC v. Pomerleau*, 2022 WL 16827448, at *5 (Del. Super. Ct. Nov. 4, 2022) ("Law of the case doctrine serves as 'a form of intra-litigation *stare decisis*.'") (citing *Carlyle Inv. Mgmt. L.L.C. v. Moonmouth Co. S.A.*, 2015 WL 5278913, at *7 (Del. Ch. Sept. 10, 2015)).

[127] 10 *Del. C.* § 1902 (emphasis added).

[128] County Defs.' Reply Br. in Supp. of Mot. To Dismiss, at 11. ("[T]he jurisdictional defense was timely asserted in the Court of Chancery in Defendants' third and fourteenth affirmative defenses which state, respectively, 'Plaintiffs have an adequate remedy at law' and '[t]he conditional use application decision is a quasi-judicial action for which this Court lacks jurisdiction.'").

In the final stages of that litigation, Defendants succeeded in persuading that Court that the remedy existed and convinced that Court to summarily dismiss the Chancery Action for lack of subject matter jurisdiction. Upon taking its decisional action, the Court of Chancery contemplated that an adequate remedy exists here. Accordingly, justice requires that this transferee court exercise its discretion and consider the matter. To be persuaded otherwise would leave Plaintiffs without a remedy in either court, violating both the spirit of § 1902 and the Court of Chancery's intent when it ended the Chancery Action.

Dismissal of Plaintiffs' request for *certiorari* review in Count II of the Amended Complaint is therefore improper. And Plaintiffs' subsequent motion seeking the same relief is moot. This matter will proceed as a petition for writ of *certiorari.*

### B. Declaratory Judgment

Lastly, Plaintiffs argue that this Court should exercise its discretion to transfer the matter back to the Court of Chancery "based upon the principle that a *writ of certiorari* review is unavailable when another adequate [equitable] remedy [of declaratory judgment] is available."[129] Under the Declaratory Judgment Act,[130] Delaware courts are empowered to render a declaratory judgment only when "[i]t

---

[129] Pls.' Answering Br. in Opp'n to County Defs.' Mot. to Dismiss at 49.
[130] 10 *Del. C.* § 6501.

30

provides a method for resolving a dispute where no other remedy exists."[131] Having determined that the adequate legal remedy of a writ of *certiorari* is available here, the declaratory judgment claim is not.

## VII. CONCLUSION

Transferred to it under § 1902, the Court exercises its discretion to conduct *certiorari* review of the Levy Court's grant. The declaratory judgment claim is improper because that relief is only appropriate where no other remedy exists. Accordingly, Defendants' Motion to Dismiss Count I (declaratory judgment) of the Amended Complaint is **GRANTED,** with prejudice. Defendants' Motion to Dismiss Count II (writ of *certiorari*) of the Amended Complaint is **DENIED.**[132] Plaintiffs' "Motion" for Certiorari is **MOOT.** Defendants shall produce the record from the Levy Court within 30 days of this Order.

**IT IS SO ORDERED**.

Vivian L. Medinilla
Judge

---

[131] *Brooks v. Lynch*, 150 A.3d 274, 2016 WL 5957674, at *2 (Del. Oct. 13, 2016) (ORDER) (citing *Mason v. Board of Pension Trustees*, 468 A.2d 298, 300 (Del. Super. Ct.), *aff'd*, 473 A.2d 1258 (Del. 1983)).

[132] The Court does not suggest that allowing Count II to remain in the Amended Complaint affords any additional rights or changes the limited scope for writ of *certiorari* review. Accordingly, and to avoid further filings, Count II of the Amended Complaint will be considered as a petition for writ of *certiorari*.

31